UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY C. MARINO, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:18-cv-11442-IT |
| | * |
| THOMAS A. TURCO, III, et al., | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

November 21, 2019

TALWANI, D.J.

Plaintiff Anthony C. Marino brought an action under 42 U.S.C. § 1983 and M. G. L. c. 231, § 60B, against the Massachusetts Partnership for Correctional Healthcare, LLC ("MPCH") and four individual Defendants. Before the court is Defendants' Motion for Referral to Medical Malpractice Tribunal [#48]. Because this court finds referral of Plaintiff's state law claim merited as to all Defendants pursuant to M. G. L. c. 231, § 60B, the Motion for Referral to Medical Malpractice Tribunal [#48] is ALLOWED.

A. Background

Plaintiff's complaint seeks damages for ongoing health problems that Plaintiff alleges are due to the failure of MPCH and its employees to provide him with appropriate and timely medical care and treatment. Am. Compl. ¶¶ 45-52 [#21]. Marino alleges that he began experiencing back and neck pain in early 2015 and underwent an MRI and two cervical epidural injections that year. Id. ¶ 12. He states that shortly before a planned surgical consultation, Marino

violated the terms of his parole and was incarcerated. Id. ¶ 17. Marino remained in custody between December 2015 and March 2018. Id. ¶¶ 11-17.[1]

Marino alleges that MPCH is a corporate entity that contracted with the Department of Corrections ("DOC") to provide medical care to DOC prisoners, that Defendant Thomas Groblewski, D.O., was MPCH's Statewide Medical Director, that Defendant Rebecca Lubelczyk, M.D., was employed by MPCH as a physician, that Defendant Elizabeth Louder was employed by MPCH as Health Services Administrator at MCI Shirley, and Defendant Vanessa Rattigan were employed by MPCH as Health Services Administrator at Pondville Correctional Center. Id. ¶¶ 5-9.

Marino contends that in April 2016, he completed a medical intake at MCI Cedar Junction, explaining that he had previously received treatment for degenerative cervical disc disease and was currently experiencing serious pain. Id. ¶ 18. He alleges that in July 2016, he submitted a form indicating that he was in severe pain, the medication provided by DOC was not relieving the pain, and he believed his herniated disc had ruptured. Id. ¶ 21. Marino asserts that the same month, he saw a practical nurse, who noted he had nerve damage and was unable to move his neck, and a physician's assistant, who noted that he was in "severe pain" because of his herniated disc and was suffering weakness in his right arm and grip. Id. ¶¶ 21-22.

Marino states that in September 2016, he was referred to neurosurgery for evaluation, but this referral was not approved by Dr. Lubelczyk. Id. ¶ 24. Marino alleges that Dr. Lubelczyk instead recommended physical therapy and medication and stated she would request an MRI. Id. Marino asserts that he filed a grievance in December 2016, regarding the delay in treatment and

---

[1] Marino was incarcerated from December 2015 to April 2016 at the Middlesex House of Corrections, from April 2016 to June 2016 at MCI Cedar Junction, from June 2016 to May 2017 at MCI Shirley, and from May 2017 until his release in March 2018 at Pondville Correctional Center. Id. ¶¶ 11-17 [#21].

2

that Health Services Administrator Louder denied the grievance, recommending physical therapy and an MRI instead of surgery. Id. ¶ 27. Marino alleges that after seeing a physical therapist who recommended a neurosurgical evaluation, he underwent a cervical spine MRI in March 2017, and had a neurosurgical consult in April. Id. ¶¶ 31-32, 34. He asserts that he was diagnosed with cervical myeloradiculopathy and was told that surgery was warranted because more conservative measures had failed. Id. ¶ 34. He states further that surgery was scheduled for June but was canceled. Id. ¶ 35. Marino alleges that he submitted a grievance regarding the delay in his treatment in October 2017. Id. ¶ 40. He states that Health Service Administrator Rattigan responded to his grievance, apologizing for the delay and stating that a clinic appointment would be scheduled "as soon as possible." Id. Marino alleges that one month later, he submitted another grievance complaining that it had been more than a month since an "urgent referral" had been made. Id. ¶ 41. He asserts further that Rattigan did not respond until November 30, 2017, when she informed him that an appointment had been scheduled for further evaluation. Id. ¶ 41. Marino states that he underwent a surgical discectomy at Boston Medical Center a month later in December 2017. Id. ¶ 44.

Plaintiff brought suit, stating that he currently suffers from acute and chronic pain, tremors and weakness in both hands, cramping in his left hand, right calf and foot, and severe emotional distress, which were caused or exacerbated by Defendants' failure to provide adequate medical care. Id. ¶ 45. Plaintiff's Amended Complaint seeks relief under 42 U.S.C. § 1983 for violation of his civil rights, and under M.G.L. c. 231, § 60B, for medical malpractice. Id. ¶¶ 46-52 [#21].

Defendants moved to dismiss Marino's complaint. Mot. to Dismiss [#35]. The court denied the motion, rejecting, inter alia, Defendants' challenge to Marino's medical malpractice claim. Order 14-17 [#43].

Defendants subsequently filed the instant motion seeking referral of the claim to a medical malpractice tribunal. In connection with the motion, Defendants have submitted evidence that Louder is a Licensed Independent Social Worker and that Rattigan is a Registered Nurse, and that both of their licenses are current in Massachusetts. Ex. 1 - Licensee Detail, Elizabeth Louder (Defs.' Reply) [#55-1]; Ex. 2 - Licensee Information, Vanessa Ratigan (Defs.' Reply) [#55-2].

B. Discussion

When a party raises a Massachusetts state law claim alleging medical malpractice, a court generally must refer the claim to a medical malpractice tribunal to determine whether Plaintiff has submitted evidence sufficient to raise a legitimate question of liability appropriate for judicial inquiry. M. G. L. c. 231, § 60B; Feinstein v. Mass. General Hosp., 643 F.2d 880 (1st Cir. 1981). "The purpose of the tribunal is to distinguish between unfortunate medical results and judicially cognizable claims of medical malpractice." Joseph v. Sweet, 125 F.Supp.2d 573, 575 (D. Mass. 2000).

For a treatment related claim to be referable, it must be brought against "a provider of health care," which the statute defines as "a person, corporation, facility, or institution licensed by the commonwealth to provide health care or professional services," and which encompasses a list of professions including physicians, social workers, and registered nurses. M. G. L. c. 231, § 60B; Salpoglou v. Shlomo Widder, M.D., P.A., 904 F.Supp. 34, 35 (D. Mass. 1995) (finding referral unwarranted because physician was not currently licensed by the state). In addition, the

4

subject matter of the claim must "implicate the professional judgment or competence of a provider." Vasa v. Compass Med. P.C., 921 N.E.2d 963, 966 (Mass. 2010). Referral is appropriate only where there is an "issue of medical malpractice, error, or mistake." M. G. L. c. 231, § 60B. See also Lenninger v. Franklin Med. Ctr., 404 Mass. 245, 247-48 (1989) (finding referral unwarranted because plaintiff's claimed harm arose from failure to comply with civil commitment statute and was unrelated to medical judgment or treatment).

Plaintiff concedes a malpractice tribunal must be convened for the medical malpractice claim brought against Dr. Groblewski and Dr. Lubelcyzk, Pl.'s Opp. To Defs.' Mot. for Referral 2 [#52], and does not oppose referral of the medical malpractice claim against MPCH. Plaintiff contends, however, that referral is not warranted for the medical malpractice claim against Defendants Louder and Ratigan because: 1) Plaintiff did not allege in his complaint that Louder and Rattigan are licensed health care providers; and 2) these two Defendants' alleged actions did not involve medical judgment.

That Plaintiff did not specifically allege that Louder and Rattigan were licensed providers of health care under M. G. L. c. 231, § 60B, is not determinative. The statute itself includes no requirement that referral determinations must be based solely on the allegations of the complaint, and Plaintiff offers no support for such a construction. Based on Defendants' unrebutted submission, Louder is a Licensed Independent Social Worker and Rattigan is a Registered Nurse, and both are currently licensed in Massachusetts. Social workers and registered nurses are specifically identified as providers of health care under the statute.

In addition, based on Marino's alleged facts, the claims brought against Rattigan and Louder are "treatment related," as his claims rely in part on allegations about their medically-related treatment decisions. See Johnston v. Stein, 29 Mass. App. Ct. 996, 997 (1990) ("[W]e

5

look to the substance, not the legal theory adopted [by the Plaintiff]"). Even though the two defendants have been sued in roles in which they responded to Plaintiff's grievances, the medical malpractice claim against them is based on their professional, medically informed judgment and competence to make a decision as to the disposition of those grievances. See Order 15-16 (allowing Plaintiff to proceed on his medical malpractice claim against Defendants Louder and Rattigan) [#43]. Plaintiff alleges that the harm to his health was caused, in part, by the "failure . . . to provide Plaintiff with the care and treatment that conformed to the standard of care . . ." and that all Defendants, including Defendant Rattigan and Defendant Louder, "owed Plaintiff a duty to provide him with adequate medical care and treatment." Am. Compl. ¶¶ 45, 51 [#21]. According to Marino's alleged facts, Defendant Louder reviewed Plaintiff's grievance related to alleged delays in treatment in December 2016 and decided that "[a]t this time surgery is not indicated, and more conservative measures, including physical therapy and an MRI are recommended." Id. ¶ 27. Similarly, Marino alleges that Defendant Rattigan reviewed Plaintiff's grievance related to alleged delays in treatment in mid-October 2017, and despite promising an "urgent referral" to re-evaluate Plaintiff for surgery, she did not respond with an appointment confirmation until November 20, 2017, and surgery was not performed until December 13, 2017. Id. ¶¶ 40-41.

Considering the substance of the case and Plaintiff's alleged facts, Plaintiff's medical malpractice claim against all five Defendants is treatment-related and is directed at providers of health care, as defined by M. G. L. c. 231, § 60B. Under the statute, the court must refer the claim to a medical malpractice tribunal.

C. Conclusion

Accordingly, for the foregoing reasons, the Defendants' Motion for Referral to Medical Malpractice Tribunal [#48] is ALLOWED. Plaintiff's medical malpractice claim, Count Two of the Amended Complaint [#21], is hereby REFERRED.

IT IS SO ORDERED.

November 21, 2019                                    /s/ Indira Talwani
                                                     United States District Judge